**[J-1-2020] [MO: Baer, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 4 EAP 2019 |
| | : | |
| Appellee | : | Appeal from the Order of Superior |
| | : | Court entered on July 5, 2018 at No. |
| | : | 251 EDA 2017 (reargument denied |
| v. | : | September 6, 2018) reversing the |
| | : | Order entered on December 6, 2016 |
| | : | in the Court of Common Pleas, |
| DARREN MONTGOMERY, | : | Philadelphia County, Criminal |
| | : | Division at No. MC-51-CR- |
| Appellant | : | 00014901-2016 |
| | : | |
| | : | ARGUED:  March 10, 2020 |

**CONCURRING AND DISSENTING OPINION**

**JUSTICE DONOHUE**                    `                    **DECIDED:  July 21, 2020**

I join the Majority's holding that the Superior Court erroneously concluded that any level of concealment satisfies the element of "concealment" as required by 18 Pa.C.S. § 6106.  I further agree that the term does not require absolute invisibility and that a totality of the circumstances analysis governs the question of whether a firearm was concealed. I respectfully dissent, however, with respect to the Majority's application of the test on the facts presented here.  I agree with Montgomery that his firearm was readily discernible to the public and therefore not concealed.  Thus, the Commonwealth failed to establish a prima facie case.

The Majority, correctly in my view, holds that a firearm is concealed "when, viewed in the totality of the circumstances, he or she carries the firearm in such a manner as to hide the firearm from ordinary observation; absolute invisibility to others is not required."

Majority Op. at 20. The corollary to this, however, is that where the firearm is not hidden from ordinary observation there is no concealment.

Here, the record establishes that Officer McCuen observed Montgomery "messing with the handle of a gun in his waistband on the 1100 block of Chelten Avenue.'" N.T., 8/15/16, at 5. This recitation establishes that the firearm was not hidden from ordinary observation and hence was not concealed. The Majority presumably agrees that, at the discrete moment in time testified to by Officer McCuen, the firearm was not concealed.

The Majority nevertheless finds that this case may go to trial. Its conclusion that the firearm was not hidden from ordinary observation notwithstanding the foregoing appears to rest on a combination of two reasons. First, only Officer McCuen's experience clued him in to the fact that the handle was a firearm as opposed to some other object. Second, Montgomery evaded the officer and discarded the firearm.

Addressing the matter of Officer McCuen's experience as a police officer, the Majority twice notes that point. Majority Op. at 2 ("Notably, Officer McCuen believed from his thirteen years of experience as a police officer that the object protruding from Appellant's waistband was a brown handle of a handgun."); *id.* at 21 ("Although the firearm was not 'fully visible,' based on his thirteen years of experience as a police officer, Officer McCuen believed that the object in Appellant's waistband was the brown handle of a handgun.") (citation to transcript omitted). I do not interpret this testimony to establish that Officer McCuen's experience was a necessary condition of his identifying the object as a firearm. The transcript does not indicate that only Officer McCuen's keen eye and experience allowed him to see what an ordinary member of the public could not. In this regard the Majority assumes that Officer McCuen's ordinary observations were superior

to those of the public. But the Majority notes that the concealed firearm statute is intended to promote transparency and alert the public. "The prohibition on carrying an unlicensed concealed weapon serves to apprise citizens of the fact that an individual is carrying deadly force, thereby lessening the chance that such individual could take his adversary, or anyone else, at a fatal disadvantage." *Id.* at 20. This implicitly acknowledges that the ordinary person can readily identify a firearm handle as a gun without seeing the entire object. Accordingly, the Commonwealth's evidence establishes that the firearm was visible to the ordinary person. If Officer McCuen saw the handle and knew it was a gun, presumably so did everyone else.

The Majority rejects Montgomery's argument that the gun was visible for all to see in part because Officer McCuen testified that the gun was not fully visible. Majority Op. at 21 n.15. But just as we reject Montgomery's argument that total invisibility is required, total visibility is not required, either. *Id.* at 20 n.14 ("Nor are we suggesting that criminal liability under Section 6106 lies each time a citizen carries an unlicensed firearm in a manner that displays a portion, but not all of the weapon."). The relevant question is whether Montgomery "carrie[d] the firearm in such a manner as to hide the firearm from ordinary observation," *id.* at 20, and nothing in the transcript establishes that Officer McCuen saw something by virtue of his experience or vantage point that the ordinary person could not.

This leaves the argument that the focus is not limited to the discrete moment in time testified to by Officer McCuen and we must consider all of the circumstances, including Montgomery's actions after-the-fact. In this respect I find a material distinction between pulling a firearm from a place in which it may have been concealed from ordinary

view but for the manipulation, versus manipulation of a firearm that is already visible to the ordinary viewer. Officer McCuen confirmed on cross-examination that this case involves the latter situation.

**Q** And you can see what you believe to be the handle of a gun?

**A** Correct.

**Q** Because you see a brown gun handle?

**A** Correct.

**Q** And you said he's messing with it?

**A** Yes.

**Q** What, exactly?

**A** His hand was on the -- like he was trying to pull it up but his hand was like -- I'll show you.  His hand was on his pants.

**Q** He was holding it, you're saying?

**A** Yes. Not in his hand. It was still in his pants like he was adjusting it.

N.T., 8/15/2016, at 9.

At most, this establishes that Montgomery was attempting to pull the firearm completely out of his pants.  That would make the gun fully visible but it does not follow that the gun was concealed prior to the adjustment observed by Officer McCuen.[1]

---

[1]  This is, to me, readily distinguishable from a case of concealing a firearm that only becomes visible because of a manipulation or movement.  For example, an individual places a firearm inside the shaft of a low boot and pulls the leg of her pant over the shaft of the boot.  As she mounts a stool, the gun becomes visible to a nearby police officer. The totality of these circumstances would establish concealment.

Expanding from the discrete moment in time that Office McCuen observed the gun, the Majority views this evidence as establishing a disputed question of fact and claims that "a jury may also conclude that the object in Appellant's waistband, although not invisible, would have gone unnoticed by ordinary observation, and that Appellant's evasion of police and discarding of the firearm when officers approached evidenced his continued intent to conceal the firearm."  Majority Op. at 22 n.16.  But how could a jury conclude the gun would have gone unnoticed through ordinary observation when the **only** evidence presented by the Commonwealth established that the gun was noticed through ordinary observation?

Moreover, the Majority claims that the post-observation actions may evidence a "continued intent to conceal the firearm."  *Id.*  This argument places the cart before the horse as the Commonwealth failed to establish concealment in the first place; there is no **continued** concealment based on the testimony and evidence presented at the preliminary hearing.  Thus, Montgomery's actions after being seen constitute nothing more than bootstrapping.  While the Majority does not use the actual phrase, its note that Montgomery "evaded" the police invokes concepts of flight and consciousness of guilt.  *See e.g.*, *Commonwealth v. Rios*, 684 A.2d 1025, 1035 (Pa. 1996) ("When a person commits a crime, knows that he is wanted therefor, and flees or conceals himself, such conduct is evidence of consciousness of guilt, and may form the basis [of a conviction] in connection with other proof from which guilt may be inferred.") (quoting *Commonwealth v. Coyle,* 203 A.2d 782, 789 (Pa. 1964)).

Here, the Majority points to Montgomery's actions as establishing that a crime was committed as opposed to their proper usage as one piece of circumstantial proof when

paired with **other** evidence. There is no other evidence of a crime here in light of Officer McCuen's testimony that he observed the firearm. Because I conclude that the only evidence offered by the Commonwealth conclusively established that concealment did not occur, whatever happened afterwards is irrelevant and cannot be used to establish an element of the crime. Moreover, the fact that this crime occurred in Philadelphia where open carry of a firearm without a license is illegal, significantly undercuts any attempt to draw inferences to support concealment from Montgomery's discarding the firearm.

Therefore, I would hold that the Commonwealth failed to meet its burden and reverse the order of the Superior Court.